Lindsey Barnhart (Bar No. 294995)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, California 94306-2112
Telephone: (650) 632-4700
Facsimile: (650) 632-4800
Email: lbarnhart@cov.com

Christian J. Pistilli (DC Bar No. 496157) (*pro hac vice* pending)
Robert Newman (DC Bar No. 457976) (*pro hac vice* pending)
850 Tenth Street, NW
Washington, DC 20001
Telephone: (202) 662-6000
Facsimile: (202) 778-5342
Email: cpistilli@cov.com
Email: rnewman@cov.com

*Attorneys for Defendants*
*THERMO FISHER SCIENTIFIC INC.*; *THE*
*MANAGEMENT PENSION COMMITTEE OF THE*
*THERMO FISHER SCIENTIFIC INC. 401(K) RETIREMENT PLAN*

[Additional counsel listed on the signature page]

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KONSTANTINA DIMOU, in a representative capacity only on behalf of the Thermo Fisher Scientific Inc. 401(k) Retirement Plan, <br><br> Plaintiff, <br><br> v. <br><br> THERMO FISHER SCIENTIFIC INC.; THE MANAGEMENT PENSION COMMITTEE OF THE THERMO FISHER SCIENTIFIC INC. 401(K) RETIREMENT PLAN; and DOES 1 to 10 inclusive, <br><br> Defendants. | Case No. 3:23-cv-1732-TWR-JLB <br><br> **DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT** <br><br> Hearing Date: April 11, 2024 <br> Hearing Time: 1:30 p.m. <br> Judge: Hon. Todd W. Robinson <br> Courtroom: 3A |

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................... 1

FACTUAL BACKGROUND ............................................................................... 2

    A.    The Parties and the Plan ........................................................... 2

    B.    Treatment of Forfeited Benefits under the Plan ....................... 3

    C.    Plaintiff's Claims ...................................................................... 4

STANDARD OF REVIEW ................................................................................. 6

ARGUMENT ...................................................................................................... 7

I.    Plaintiff Fails to State a Claim for Breach of Fiduciary Duty ............................ 7

    A.    Plaintiff Has Failed to Allege a Breach of Fiduciary Duty ..................... 7

        1.    Funding a Plan Is a Settlor, Not a Fiduciary, Function. ............... 7

        2.    Plaintiff's Invocation of Defendants' "Allocation" Decisions Does Not Cure Her Pleading Deficiencies. ........................ 9

        3.    Defendants' Payment of Benefits in Compliance with the Terms of the Plan Is Not a Breach of Fiduciary Duty. ............... 11

    B.    Plaintiff Has Failed to Allege an Injury to the Plan. ............................. 12

II.    Plaintiff Has Failed to State a Claim for Violation of ERISA's Anti-Inurement Provision ............................................................................... 15

III.    Plaintiff Has Failed to State a Claim for Violation of ERISA's Prohibited Transactions Provisions. ..................................................................... 17

IV.    Plaintiff Has Failed to State a Claim for Failure to Monitor Fiduciaries. ......... 19

CONCLUSION ................................................................................................ 20

# TABLE OF AUTHORITIES

**Cases**                                                          **Page(s)**

*Acosta v. Bain*,
  910 F.3d 502 (9th Cir. 2018) ................................................................7

*Glanton ex rel. ALCOA Prescription Drug Plan v. AdvancePCS Inc.*,
  465 F.3d 1123 (9th Cir. 2006) ............................................................14

*Aldridge v. Lily-Tulip, Inc. Salary Ret. Plan Benefits Comm.*,
  953 F.2d 587 (11th Cir. 1992) ............................................................16

*Armstrong v. Amsted Indus., Inc.*,
  2004 WL 1745774 (N.D. Ill. July 30, 2004) .......................................19

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).............................................................................6

*Black v. Greater Bay Bancorp Exec. Supp. Comp. Benefits Plan*,
  2017 WL 8948732 (N.D. Cal. Jan. 18, 2017)......................................18

*Boland v. King Cnty. Med. Blue Shield*,
  798 F. Supp. 638 (W.D. Wash. 1992) .................................................11

*In re Brobeck, Phleger & Harrison LLP*,
  414 B.R. 627 (Bankr. N.D. Cal. 2009) .................................................8

*Chao v. Hagemeyer N. Am., Inc.*,
  2006 WL 8443663 (D.S.C. Oct. 20, 2006)..........................................18

*In re Citigroup ERISA Litig.*,
  2009 WL 2762708 (S.D.N.Y. Aug. 31, 2009)......................................9

*Coulter v. Morgan Stanley & Co.*,
  753 F.3d 361 (2d Cir. 2014) ............................................................4, 8

*Diaz v. Westco Chems., Inc.*,
  2023 WL 3615663 (9th Cir. May 24, 2023).........................................13

*Gov't Computer Sales Inc. v. Dell Mktg.*,
  199 F. App'x 636 (9th Cir. 2006).........................................................6

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

CASE NO.: 3:23-CV-1732-TWR-JLB

*Great-West Life & Annuity Ins. Co. v. Knudson*,
    534 U.S. 204 (2002)..................................................................................11

*Hall v. Hill Refrigeration, Inc.*,
    36 F. Supp. 2d 1185 (C.D. Cal. 1999) ..............................................7, 8

*Harris v. Amgen, Inc.*,
    738 F.3d 1026 (9th Cir. 2013) ................................................................6

*Holliday v. Xerox Corp.*,
    732 F.2d 548 (6th Cir. 1984) ........................................................16, 17

*Horvath v. Keystone Health Plan East, Inc.*,
    333 F.3d 450 (3d Cir. 2003) ................................................................14

*Krohnengold v. N.Y. Life Ins. Co.*,
    2022 WL 3227812 (S.D.N.Y. Aug. 10, 2022).......................15, 16, 17

*LaRue v. DeWolff, Boberg & Assocs., Inc.*,
    552 U.S. 248 (2008)....................................................................12, 13

*Laska v. Abbott Severance Pay Plan for Emps. of Kos Pharma.*,
    2014 WL 12567795 (C.D. Cal. Sept. 30, 2014) ...........................14, 15

*Lockheed Corp. v. Spink*,
    517 U.S. 882 (1996)...........................................................4, 7, 14, 18

*Macedo v. Bank Nat'l Trust Co.*,
    2014 WL 1600497 (S.D. Cal. Apr. 17, 2014) ......................................6

*Maez v. Mtn. States Tel. & Tel., Inc.*,
    54 F.3d 1488 (10th Cir. 1995) ......................................................16, 17

*Monper v. Boeing Co.*,
    104 F. Supp. 3d 1170 (W.D. Wash. 2015) ..........................................19

*Munro v. Univ. of S. Calif.*,
    896 F.3d 1088 (9th Cir. 2018) ......................................................12, 13

*Navarre v. Luna (In re Luna)*,
    406 F.3d 1192 (10th Cir. 2005) ............................................................8

*Parrino v. FHP, Inc.*,
    146 F.3d 699 (9th Cir. 1998) ................................................................6

*Pegram v. Herdrich*,
   530 U.S. 211 (2000)................................................................................8, 9

*Petroff v. Ret. Benefit Plan of Am. Airlines, Inc.*,
   2015 WL 13917970 (C.D. Cal. July 28, 2015)...............................................8

*Reynolds v. Edison Int'l*,
   238 F.3d 430 (9th Cir. 2000) .................................................................7

*Spink v. Lockheed Corp.*,
   125 F.3d 1257 (9th Cir. 1997) ...............................................................15

*Sullivan v. CUNA Mut. Ins. Soc'y*,
   649 F.3d 553 (7th Cir. 2011) ...............................................................11

*Thondukolam v. Corteva, Inc.*,
   2020 WL 5944423 (N.D. Cal. Oct. 7, 2020) ...............................................9

*Trs. of the Graphic Commc'ns Int'l Union Upper Midwest Local 1M Health*
   *& Welfare Plan v. Bjorkedal*,
   516 F.3d 719 (8th Cir. 2008) .................................................................8

*Wehner v. Genentech, Inc.*,
   2021 WL 507599 (N.D. Cal. Feb. 9, 2021) ...............................................19

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
   865 F. Supp. 2d 1002 (C.D. Cal. 2011) ...................................................12

*Whyte v. City of San Diego*,
   2022 WL 17491178 (S.D. Cal. Dec. 7, 2022) ...........................................20

*Wright v. Or. Metallurgical Corp.*,
   360 F.3d 1090 (9th Cir. 2004) ...........................................................9, 18

**Statutes**

29 U.S.C. § 1103................................................................................15

29 U.S.C. § 1106................................................................................17

29 U.S.C. § 1132..................................................................................6

**Other Authorities**

26 C.F.R. § 1.401-7(a) (1963)...........................................................1, 4

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S AMENDED
COMPLAINT

CASE NO.: 3:23-CV-1732-TWR-JLB

DOL Adv. Op. 79-56A, 1979 WL 7031 (Aug. 9, 1979) ........................................1, 4

**PRELIMINARY STATEMENT**

Plaintiff's Amended Complaint seeks to bar the longstanding practice—acknowledged by both the Internal Revenue Service ("IRS") and the Department of Labor ("DOL")—of using forfeited benefits in a 401(k) plan's trust fund to offset company contributions to the plan.[1]  Plaintiff's alternative reading of ERISA—which posits that it is *illegal* to utilize forfeitures to cover company contributions—flies in the face of this well-established practice as well as basic tenets of ERISA jurisprudence.

To be clear, there is no dispute that participants in Defendants' pension plan—the Thermo Fisher Scientific Inc. 401(k) Retirement Plan (the "Thermo Fisher Plan" or the "Plan")—have received all of the benefits they are due under the terms of the Plan.  Instead, Plaintiff suggests that Defendants had a fiduciary duty to try to convince the Plan's sponsor, Thermo Fisher Scientific Inc. (the "Company"), to contribute *more* money to the Plan by allocating forfeitures to cover the Plan's expenses.  According to Plaintiff, if the Company had decided to increase its contributions to the Plan, such increases would have obviated the need for Defendants to deduct Plan expenses from participants' retirement accounts, thereby increasing participants' benefits.

The problem with Plaintiff's theory is that the amount of money an employer contributes to a plan is a *settlor* decision that does not implicate an administrator's fiduciary duties.  The law is clear that an employer determines how much money it will contribute to a plan in its settlor capacity and may make such decisions solely in its own interest, without regard to the interests of plan participants.  Because contribution decisions are settlor—not fiduciary—in nature, it follows that Defendants cannot breach

---

[1] *See, e.g.*, 26 C.F.R. § 1.401-7(a) (1963) ("[F]orfeitures arising . . . for any . . . reason . . . must be used as soon as possible to reduce the employer's contributions under the plan.  However, a . . . plan may anticipate the effect of forfeitures in determining the costs under the plan."); DOL Adv. Op. 79-56A, 1979 WL 7031 (Aug. 9, 1979) (describing circumstance whereby "[f]orfeitures are applied to reduce future employer contributions" and providing guidance without suggesting that such a practice violated ERISA).

any fiduciary duty to participants by failing to cause the Company to contribute more money to the Plan.  Indeed, Plaintiff has not alleged any facts to show that Defendants *could have caused* the Company to contribute more money, rendering Plaintiff's theory of injury entirely speculative.  Plaintiff's claims for breach of fiduciary duty should be dismissed as a matter of law.

Plaintiff's other claims for relief are equally flawed.  For example, Plaintiff alleges that Defendants violated ERISA's anti-inurement provision, notwithstanding case law holding that decisions about a company's contributions to a plan, and the allocation of assets within a plan, do not implicate the anti-inurement provision.  Plaintiff similarly alleges that Defendants violated ERISA's prohibited transactions provisions, once again ignoring case law holding that the allocation of assets within a plan is not a transaction prohibited by ERISA.  Finally, Plaintiff seeks to hold the Company liable for failing to monitor fiduciaries, notwithstanding that she has failed to state a viable claim for breach of fiduciary duty or allege any facts to suggest that the Company's monitoring efforts were deficient.

For these and other reasons, Plaintiff has failed to state any claim upon which relief can be granted.  Her Amended Complaint should be dismissed.

## FACTUAL BACKGROUND

### A.   The Parties and the Plan

Plaintiff is a participant in the Thermo Fisher Plan, a defined contribution plan funded by a combination of participant and employer contributions.  Am. Compl. ¶¶ 1, 4, 13.  The Plan's assets are held in a dedicated trust fund and allocated to individual participant accounts.  *Id.* ¶¶ 12–13.  A participant's benefit under the Plan consists of the participant's contributions to her account, the Company's contributions to her account, as well as any "any income, expenses, gains and losses, and . . . forfeiture[s]" that may be allocated to her account.  *Id.* ¶ 14 (quoting 29 U.S.C. § 1002(34)); *see also* Declaration of Lindsey Barnhart ("Barnhart Decl."), Ex. 1 (hereinafter, "Plan"), at art. III.

Under the terms of the Plan, the Company serves as both Plan sponsor and Plan administrator.  Am. Compl. ¶ 7; *see also* Plan § 9.02.  The Plan document sets forth the Company's respective duties as both sponsor and administrator.  As is relevant here, the Plan specifies that the Company, as sponsor, shall perform various "settlor" functions for the Plan, including exercising "sole responsibility for making [Plan] contributions."  Plan § 9.02.  By contrast, the Company, as administrator, has "only those powers, duties, responsibilities, and obligations as are specifically given to [it] under th[e] Plan."  *Id.*  Among these responsibilities is the responsibility for "the administration of the Plan."  *Id.*  The Company shares this responsibility with the Management Committee, which Plaintiff alleges "was created by [the Company] to assist in the management of the Plan."  Am. Compl. ¶ 8.

Like all 401(k) plans, the Thermo Fisher Plan incurs various administrative expenses, including expenses related to recordkeeping, advisory services, and legal fees.  *Id.* ¶ 15.  Under the terms of the Plan, participant accounts are charged with an allocation of the Plan's administrative expenses, which is deducted from each participant's account on a quarterly basis.  *Id.* ¶ 16.

### B.   Treatment of Forfeited Benefits under the Plan

Participants in the Plan are immediately vested in any amounts they contribute to their individual accounts.  *Id.* ¶ 17.  Participants become fully vested in *the Company's* contributions to their accounts after two years of benefit service.  *Id.* ¶ 17; *see also* Plan § 4.01.

When a participant has a break in benefit service prior to fully vesting in her account, the Plan specifies that the participant forfeits any unvested contributions that have been allocated to her account.  Am. Compl. ¶ 18; *see also* Plan § 4.01.  These forfeited amounts remain in the Plan's trust fund, where they can be reallocated.  Pursuant to the terms of the Plan, forfeited benefits can be reallocated for one of two purposes: (1) "to pay [the] reasonable expenses of the Plan (to the extent not paid by the Employer)," or (2) "to reduce [the Company's] Discretionary Contributions, Special

3

Contributions, Matching Contributions and/or other contributions payable under the Plan, for the Plan Year in which the forfeiture occurs or any prior or future Plan Year, as determined by the Company." Am. Compl. ¶ 19 (quoting Plan § 3.12). This provision is consistent with IRS and DOL guidance acknowledging the use of forfeitures to cover company contributions. *See, e.g.*, 26 C.F.R. § 1.401-7(a) (1963); DOL Adv. Op. 79-56A, 1979 WL 7031 (Aug. 9, 1979).

Of course, in deciding how to allocate forfeitures, Defendants must be mindful of the amount the Company intends to contribute to the Plan. As Plan settlor, the Company has exclusive authority to decide how much money it will contribute to the Plan each year and can make its funding decisions solely in its own interest, without regard to the interests of Plan participants. Plan § 9.02; *see also Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996); *Coulter v. Morgan Stanley & Co.*, 753 F.3d 361, 367 (2d Cir. 2014). Here, Plaintiff acknowledges that between 2017 and 2022, the Company exercised its decision-making authority over Plan funding decisions to *reduce* the Company's contributions to the Plan in light of the forfeited benefits in the Plan's trust fund. Am. Compl. ¶¶ 22–27. With the Company electing to reduce its contributions, Defendants allocated the forfeited benefits in the Plan's trust fund to cover participants' benefits, instead of allocating them to cover expenses. *Id.* By allocating forfeitures in this manner, Defendants ensured that Plan participants received all of the benefits they were due under the terms of the Plan. Plaintiff does not allege otherwise.

**C.    Plaintiff's Claims**

Plaintiff worked at the Company from 2021 to 2023. Upon her departure, Plaintiff signed a Severance Agreement, which contained, among other things, (1) a general release, and (2) a collective/class action waiver. Pursuant to the terms of the general release, Plaintiff "knowingly, voluntarily, irrevocably and unconditionally waive[d], release[d], acquit[ted], and forever discharge[d] the Company . . . from any and all claims, liabilities, damages, actions, causes of action and suits" against the Company,

"their employee benefit plans and programs[,] and their administrators and fiduciaries." Pursuant to the collective action waiver, Plaintiff "waive[d] any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on . . . a claim" in which the Company, its employee benefit plans, or its administrators and fiduciaries are a party.

Just four months after signing the Severance Agreement, Plaintiff filed a Class Action Complaint against Defendants on September 19, 2023 (the "Complaint" or "Compl."). In her Complaint, Plaintiff challenged Defendants' decision to allocate forfeited benefits in the Plan's trust fund to pay participants' benefits instead of the Plan's expenses. Compl. ¶¶ 28, 36–37. According to Plaintiff, Defendants' decision to allocate forfeitures in this manner induced the Company to "reduc[e]" its "future . . . contributions" to the Plan, resulting in participants "incur[ring] deductions from their individual accounts . . . to cover administrative expenses" that could have otherwise "been covered in whole or in part by utilizing forfeited funds to pay [the Plan's] expenses." *Id.* ¶ 28. Plaintiff brought six claims based on the use of forfeitures to offset Company contributions: (i) two claims for breach of fiduciary duty; (ii) one claim for violation of ERISA's anti-inurement provision; (iii) two claims for violation of ERISA's prohibited transactions provisions; and (iv) one claim for failure to monitor fiduciaries. *Id.* ¶¶ 34–69.

On November 2, 2023, Defendants notified Plaintiff that her Class Action Complaint violated the terms of her Severance Agreement. In response, Plaintiff filed a First Amended Complaint against Defendants on December 8, 2023 (the "Amended Complaint" or "Am. Compl."). Plaintiff's Amended Complaint removes the class action allegations and disclaims Plaintiff's intent to seek any individual relief pursuant to the

lawsuit. *See generally* Am. Compl. The substance of Plaintiff's allegations remains substantially the same.[2]

## STANDARD OF REVIEW

To survive a motion to dismiss, a complaint must state a claim for relief that is "plausible" on its face based on "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing a motion to dismiss, "[t]he court must accept all allegations of material fact as true," but need not "assume the truth of [any] legal conclusions." *Macedo v. Bank Nat'l Trust Co.*, 2014 WL 1600497, at *1 (S.D. Cal. Apr. 17, 2014) (cleaned up).

Although a court's analysis of a motion to dismiss is generally limited to the allegations in the complaint, a court may also properly consider "documents incorporated into the complaint by reference" as well as "matters over which a court may take judicial notice." *Harris v. Amgen, Inc.*, 738 F.3d 1026, 1035 (9th Cir. 2013). Courts may also consider a document if it "is integral to the plaintiff's claims and its authenticity is not in dispute, even if the plaintiff elects not to attach the document to [her] complaint." *Gov't Computer Sales Inc. v. Dell Mktg.*, 199 F. App'x 636, 638 (9th Cir. 2006). Given Plaintiff's reliance on the Thermo Fisher Plan, the Court may permissibly consider the Plan document in connection with Defendants' motion. *See, e.g.*, *Parrino v. FHP, Inc.*, 146 F.3d 699 (9th Cir. 1998) (holding that court correctly considered ERISA plan documents on a motion to dismiss, even though the documents were not attached to the complaint).

---

[2] The only difference between the substantive allegations in Plaintiff's pleadings is that Plaintiff's initial Complaint referenced 29 U.S.C. § 1132(a)(3), whereas the Amended Complaint contains no such reference. *Compare* Compl. ¶¶ 1–2 *with* Am. Compl.

**ARGUMENT**

**I.    Plaintiff Fails to State a Claim for Breach of Fiduciary Duty.**

**A.    Plaintiff Has Failed to Allege a Breach of Fiduciary Duty.**

Plaintiff claims that Defendants breached their fiduciary duties of loyalty and prudence by purportedly "cho[osing] to use" the forfeited benefits in the Plan's trust fund "for the exclusive purpose of reducing [the Company's] own . . . contributions to the Plan," instead of using such benefits to pay the Plan's expenses.  Am. Compl. ¶ 33.  The law is clear, however, that decisions about a company's "own . . . contributions to the Plan" are *settlor* decisions that do not give rise to fiduciary liability.  Because Plaintiff does not challenge a fiduciary decision in her Amended Complaint, her breach of fiduciary duty claims fail as a matter of law.

*1.    Funding a Plan Is a Settlor, Not a Fiduciary, Function.*

It is well established that employers who sponsor ERISA plans exercise both fiduciary and nonfiduciary duties with respect to the plan.  The law therefore recognizes that employers can—and do—wear "two hats" in the ERISA context: a "fiduciary hat," which the employer wears when administering the plan for the benefit of plan participants, and a "settlor" hat, which the employer wears when performing settlor functions, such as establishing, designing, amending, funding, or terminating the plan. *Acosta v. Bain*, 910 F.3d 502, 517 (9th Cir. 2018).

Critically, ERISA's fiduciary provisions apply *only* when the employer is wearing its "fiduciary hat."  *See, e.g.*, *Hall v. Hill Refrigeration, Inc.*, 36 F. Supp. 2d 1185, 1189 (C.D. Cal. 1999) ("[A]n ERISA fiduciary is only liable as a fiduciary when it is acting as one.").  Actions taken by the employer in a settlor capacity do not give rise to fiduciary liability.  *Spink*, 517 U.S. at 890; *Reynolds v. Edison Int'l*, 238 F.3d 430, 430 (9th Cir. 2000).  For this reason, the "threshold question" in any ERISA case asserting a breach of fiduciary duty claim is "not whether the actions of some person . . . adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was

performing a fiduciary function) when taking the action subject to the complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000).

"[D]ecisions relating to the timing and amount of contributions" to the plan are settlor, not fiduciary, responsibilities. *Coulter*, 753 F.3d at 367 (quoting Lee T. Polk, ERISA Practice & Litig. § 3:32 (2013)); *see also Petroff v. Ret. Benefit Plan of Am. Airlines, Inc.*, 2015 WL 13917970, at *14 (C.D. Cal. July 28, 2015) ("Funding a plan is a settlor function."). It therefore follows that decisions about whether to fund a plan—and by what amount—do not give rise to fiduciary liability. *See, e.g.*, *Trs. of the Graphic Commc'ns Int'l Union Upper Midwest Local 1M Health & Welfare Plan v. Bjorkedal*, 516 F.3d 719, 732 (8th Cir. 2008) (holding that a corporate officer "who chooses to pay corporate obligations in lieu of employer contributions to an ERISA plan does not breach a fiduciary duty"); *Navarre v. Luna (In re Luna)*, 406 F.3d 1192, 1207 (10th Cir. 2005) (holding that employers' "decision to use their limited funds to pay other business expenses rather than make contributions to the Funds was a business decision, not a breach of fiduciary duty"); *see also Hall*, 36 F. Supp. 2d at 1190 (rejecting breach of fiduciary duty claim because decision "to modify the employer contribution rate [was] outside of the scope of [defendants'] administrative and fiduciary duties"); *In re Brobeck, Phleger & Harrison LLP*, 414 B.R. 627, 637 (Bankr. N.D. Cal. 2009) ("[C]hoosing not to make employer contributions is a business or corporate function, not a fiduciary function with respect to a plan.").

The Thermo Fisher Plan accords with these principles. As explained above, the Plan document specifies that the Company, *as "[e]mployer[,] shall have the sole responsibility for making . . . contributions"* to the Plan. Plan § 9.02 (emphasis added). Defendants have no such responsibilities *as fiduciaries*. In fact, the Plan expressly forbids Defendants, as fiduciaries, from participating in Plan contribution decisions. *See id.* (explaining that Defendants, as administrators, have "only those powers, duties, responsibilities, and obligations as are specifically given to [them] under th[e] Plan").

Because Plaintiff bases her breach of fiduciary duty claims on the Company's decision to "reduc[e] its . . . future contributions to the Plan," she fails to identify a fiduciary decision that gives rise to liability. Am. Compl. ¶ 33. In the absence of a fiduciary decision, Plaintiff's breach of fiduciary duty claims fail as a matter of law. *See, e.g.*, *Wright v. Or. Metallurgical Corp.*, 360 F.3d 1090, 1102 (9th Cir. 2004) (affirming dismissal of breach of fiduciary duty claim "on the ground that the conduct of the defendant was not that of a 'fiduciary,' but rather a 'settlor'"); *Thondukolam v. Corteva, Inc.*, 2020 WL 5944423, at *2 (N.D. Cal. Oct. 7, 2020) (dismissing breach of fiduciary duty claim that "challeng[ed] corporate decision-making rather than fiduciary acts").

### 2. *Plaintiff's Invocation of Defendants' "Allocation" Decisions Does Not Cure Her Pleading Deficiencies.*

Recognizing that plan funding decisions do not give rise to fiduciary liability, Plaintiff attempts to recast the Company's funding decisions as fiduciary in nature by suggesting that "Defendants' reallocation of the forfeitures in the Plan's trust fund" somehow *induced* the Company to "reduc[e] . . . Company contributions" to the Plan. Am. Compl. ¶ 28. This argument does not withstand scrutiny. A fiduciary does not control a company's decision to contribute assets to a plan; instead, the company makes plan funding decisions solely in its settlor capacity. *Pegram*, 530 U.S. at 225 ("ERISA . . . require[s] . . . that the fiduciary with two hats wear only one at a time."); *In re Citigroup ERISA Litig.*, 2009 WL 2762708, at *11 (S.D.N.Y. Aug. 31, 2009) (refusing to impose duty on ERISA fiduciary that would intrude on sponsor's duties as settlor).

Plaintiff's theory also conflicts with the Plan document. As the Thermo Fisher Plan makes clear, "[n]either the Trustee nor any Committee shall have . . . any responsibility with respect to any action required by the Plan to be taken by the Employer" as settlor, including "the failure of [the Company to] make any payment or contribution" or "to collect any contribution" or to "determine the correctness of the amount of any contribution" to the Plan. Plan § 11.02. It is simply not within

9

Defendants' powers as fiduciaries to induce the Company to increase or decrease the amount it decides to contribute to the Plan.  Defendants cannot be held liable for failing to do something they lack the requisite authority to do under the terms of the Plan.

Indeed, Plaintiff's theory of fiduciary responsibilities could have disastrous consequences for ERISA plans.  Plaintiff contends that, to comply with their fiduciary duties, Defendants should have allocated the forfeited benefits in the Plan's trust fund to "pay [the Plan's] reasonable expenses"—instead of using them "to reduce [the Company's] contributions"—because allocating forfeitures in this manner would have supposedly forced the Company to contribute additional funds to the Plan.  Am. Compl. ¶¶ 19, 28.  Plaintiff's theory, however, assumes that Defendants would have been successful in forcing the Company to fund the Plan at a level that would have allowed it to pay its own expenses *and* provide participants with the full amount of their benefits.  Of course, one could easily imagine a situation in which a fiduciary is *not* successful in convincing a company to fund a plan at a level that would cover administrative expenses as well as fund benefits.  In the event that a fiduciary were unsuccessful in inducing a company to increase its contributions to a plan, a fiduciary's use of forfeited benefits to pay plan expenses—as opposed to the benefits due under the terms of the plan—could result in a funding shortfall.  ERISA simply does not impose on fiduciaries the obligation to calculate the risk of not using existing plan assets to provide benefits due under a plan in the hope that the employer will contribute more.

Plaintiff's theory suffers from other problems as well.  For example, Plaintiff is incorrect insofar as she suggests that it would always be in participants' best interest for a company to contribute more to its pension plan.  Under the McNamara-O'Hara Service Contract Act, 41 U.S.C. § 6701–07 (the "SCA"), for instance, employers are required to pay employees a specified level of total compensation, which includes both wages and employer contributions to any 401(k) plan.  The allocation of forfeitures does not count

towards the required wage amount.[3]  Therefore, if forfeitures are allocated to cover a plan's expenses, and a covered employer is thereby "forced" by a plan fiduciary to contribute more to its 401(k) plan, lower take-home wages are required to be paid to the employer's employees.  Such reductions in employees' wages could have a significant impact on employees' pay checks, making them *worse off* (at least in the short term) than if the company had contributed less to its 401(k) plan.  Plan fiduciaries cannot—and should not—be expected to evaluate the host of effects that might occur were they to attempt to "force" an employer to put more money into a pension plan in order to determine whether such course of action is in participants' best interests.  Fortunately, ERISA does not impose such obligations on plan fiduciaries.  *See Sullivan v. CUNA Mut. Ins. Soc'y*, 649 F.3d 553, 556 (7th Cir. 2011) ("The fiduciary duties created by ERISA are limited to the administration of a plan."); *Boland v. King Cnty. Med. Blue Shield*, 798 F. Supp. 638, 644 (W.D. Wash. 1992) ("ERISA applies a fiduciary standard only to the management of the plan . . . .").[4]

        3.        *Defendants' Payment of Benefits in Compliance with the Terms of the Plan Is Not a Breach of Fiduciary Duty.*

With the Company's funding decisions properly construed as settlor—not fiduciary—in nature, Defendants' compliance with their fiduciary obligations is obvious.

As Plaintiff concedes, the terms of the Thermo Fisher Plan allow for forfeited benefits to be allocated "either to pay [the] reasonable expenses of the Plan (to the extent not paid by the Employer) or to reduce [the Company's] Discretionary Contributions, Special Contributions, Matching Contributions and/or other contributions payable under

---

[3] McNamara-O'Hara Service Contract Act (SCA), Dep't of Labor, https://www.dol.gov/agencies/whd/government-contracts/service-contracts (last visited Jan. 10, 2024).

[4] These—and other—issues illustrate the wisdom of the Supreme Court's admonition that ERISA is a "comprehensive and reticulated statute," for which courts should be "especially reluctant to tamper with the enforcement scheme."  *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209 (2002) (cleaned up).

the Plan." Am. Compl. ¶ 19. As Plaintiff further concedes, the Company, as settlor, made the decision to "reduc[e] . . . Company contributions" as a result of the existence of forfeitures in the Plan's trust fund. *Id.* ¶ 33. In light of this settlor decision, Defendants, as fiduciaries, had to "allocate and use" the forfeited benefits in the Plan's trust fund in a way that ensured participants would receive the full amount of their benefits. *Id.* ¶ 19. Tellingly, Plaintiff does not allege that there were sufficient assets in the Plan to pay participants the full amount of their benefits *in addition to* administrative expenses. Accordingly, it was incumbent on Defendants to use the forfeitures in the Plan's trust fund to pay participants' benefits *instead of* using forfeitures to pay the Plan's expenses. Any other decision could have resulted in a funding shortfall, harming Plan participants.[5]

**B.     Plaintiff Has Failed to Allege an Injury to the Plan.**

Plaintiff's breach of fiduciary duty claims fail for the separate and independent reason that Plaintiff has failed to plead any injury to the Plan.

It is black-letter law that to state a claim for breach of fiduciary duty under ERISA, a plaintiff must allege an injury to the plan. It is not enough that a plaintiff alleges some sort of individual injury, separate and distinct from a plan injury. *See, e.g.*, *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 256 (2008) ("§ 502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries."); *Munro v. Univ. of S. Calif.*, 896 F.3d 1088, 1092 (9th Cir. 2018) ("[A] plaintiff bringing a suit for breach of fiduciary duty . . . seeks recovery only for injury done to the plan."); *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 865 F. Supp. 2d 1002, 1043 (C.D. Cal. 2011) ("To

---

[5] Although the Amended Complaint mentions that certain amounts remained in the Plan's forfeiture account at year-end, there is no allegation that these amounts were not shortly thereafter used to fund contributions. *See, e.g.*, Am. Compl. ¶ 24 (allocating $4,285,000 to cover Company contributions, leaving a balance of $69,000 in the Plan's forfeiture account); *id.* ¶ 25 (allocating $4,142,000 to cover Company contributions, leaving a balance of $772,000 in the Plan's forfeiture account); ¶ 26 (allocating $4,623,000 to cover Company contributions, leaving a balance of $449,000 in the Plan's forfeiture account).

survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege in the complaint that the fiduciary injured the benefit plan or otherwise jeopardized the entire plan or put at risk plan assets." (cleaned up)).

While a participant in a defined contribution plan may permissibly limit the scope of her breach of fiduciary duty claim to the loss of plan assets in her individual account, such limitation does not relieve the plaintiff of her obligation to show an injury to the plan as a whole. *LaRue*, 552 U.S. at 256. On the contrary, while "an individual may bring an ERISA claim alleging breach of fiduciary duty even if the claim pertains only to her own account and seeks relief for losses limited to that account," the plaintiff must still show that "it is the plan, not the individual beneficiaries and participants, that benefit from a winning claim for breach of fiduciary duty." *Munro*, 896 F.3d at 1093.

Here, Plaintiff fails to allege any cognizable injury to the Thermo Fisher Plan. As explained above, the crux of Plaintiff's breach of fiduciary duty claims is that Defendants should have allocated assets within the Plan differently, using forfeited benefits to pay Plan expenses instead of using forfeitures to offset the Company's contributions. *See supra* at 7. The allocation of benefits within a plan, however, does not give rise to a plan injury. On the contrary, allegations that a plan should have "allocated benefits differently" do not establish "that the plan itself has suffered any injury." *Diaz v. Westco Chems., Inc.*, 2023 WL 3615663, at *1 (9th Cir. May 24, 2023).

In the alternative, Plaintiff alleges that Defendants' actions "harmed the Plan" by inducing the Company to "reduc[e] future Company contributions that would otherwise have increased Plan assets." Compl. ¶ 28. This argument fails for two reasons.

First, as explained above, plan funding decisions are settlor in nature and do not give rise to fiduciary liability. *See supra* at 7–11. Accordingly, a settlor's decision to reduce its contributions to the plan cannot supply the injury necessary to prove a breach of fiduciary duty claim.

Second, even if a reduction in contributions were a cognizable injury to the Plan, Plaintiff has not plausibly alleged that Defendants' actions *caused* the Company to reduce

13

its contributions.  Instead, Plaintiff is speculating that had Defendants made a different decision about how to allocate forfeited benefits within the Plan, the Company would have made a different decision about how much to contribute to the Plan.  Plaintiff, however, has failed to plead any facts showing a linkage between the two decisions.  Theories of injury that rely on mere speculation as to what a plan sponsor, in its role as settlor, might do in response to a particular course of action are insufficient to state a breach of fiduciary duty claim.  *See, e.g.*, *Horvath v. Keystone Health Plan East, Inc.*, 333 F.3d 450, 457 (3d Cir. 2003) (holding that "notion that the firm would have passed [certain] savings on to its employees in the form of a higher salary or additional benefits[]" was "far too speculative to serve as the basis for a claim of individual loss"); *Glanton ex rel. ALCOA Prescription Drug Plan v. AdvancePCS Inc.*, 465 F.3d 1123, 1125 (9th Cir. 2006) (affirming dismissal of ERISA case for insufficient allegation of injury where "any prospective benefits depend on an independent actor who retains broad and legitimate discretion the courts cannot presume either to control or to predict" (cleaned up)).

Indeed, Plaintiff's theory of injury is particularly speculative given the recourse available to a plan sponsor when a fiduciary fails to allocate forfeitures in a manner that ensures participants receive the benefits they are due under the terms of the plan.  For example, a plan sponsor may decide to replace the fiduciary with one who will allocate forfeitures in a manner that ensures that participants receive their benefits.  The plan sponsor may also amend the plan to reduce the benefits that are due under the terms of the plan in order to match the sponsor's funding intentions.  Alternatively, the plan sponsor may amend the plan to provide that forfeitures *must* be used to reduce company contributions and *cannot* be used to cover plan expenses.  Each of these options is permissible under ERISA.  *See Spink*, 517 U.S. at 887 ("Nothing in ERISA requires employers to establish employee benefit plans.  Nor does ERISA mandate what kind of benefits employers must provide if they choose to have such a plan."); *see also Laska v. Abbott Severance Pay Plan for Emps. of Kos Pharma.*, 2014 WL 12567795, at \*2 (C.D.

14

Cal. Sept. 30, 2014) ("[W]hen plan administrators amend a plan, as with when they establish or structure a plan, they act in their settlor capacity and owe no fiduciary duties to beneficiaries.").

## II. Plaintiff Has Failed to State a Claim for Violation of ERISA's Anti-Inurement Provision.

Plaintiff next contends that Defendants' purported decision to utilize forfeited benefits in the Plan "as a substitute for the Company's own . . . contributions" violated ERISA's anti-inurement provision. Am. Compl. ¶ 48. Plaintiff is wrong. A company's decision about how much to contribute to a plan—and a fiduciary's allocation of plan assets—do not constitute unlawful inurements under ERISA.

ERISA § 403(c) provides that "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to the participants in the plan . . . and defraying [the] reasonable expenses of administering the plan." 29 U.S.C. § 1103(c)(1). Contrary to Plaintiff's suggestion, this provision does not prohibit an employer from realizing *any* benefit associated with the operation of a pension plan. On the contrary, employers can—and do—receive benefits from maintaining a pension program, including "attracting and retaining employees, paying deferred compensation, settling or avoiding strikes, providing increased compensation without increasing wages, increasing employee turnover, and reducing the likelihood of lawsuits by encouraging employees who would otherwise have been laid off to depart voluntarily." *Spink v. Lockheed Corp.*, 125 F.3d 1257, 1260 (9th Cir. 1997). None of these indirect benefits results in a violation of ERISA's anti-inurement provision. *Id.*; *see also Krohnengold v. N.Y. Life Ins. Co.*, 2022 WL 3227812, at *10 (S.D.N.Y. Aug. 10, 2022) ("[A]llegations of 'indirect' benefits inuring to an employer are insufficient to state an anti-inurement claim under Section 403(c)(1).").

Instead, the anti-inurement provision is concerned with preventing employers from realizing one very specific benefit from the operation of a pension plan: the "diver[sion]"

of plan assets "to themselves." *Maez v. Mtn. States Tel. & Tel., Inc.*, 54 F.3d 1488, 1506 (10th Cir. 1995). The "reversion or diversion of Plan assets" is a critical element of an anti-inurement claim, *Krohnengold*, 2022 WL 3227812, at *11, and thus to state a claim under ERISA's anti-inurement provision, a plaintiff must allege "a removal of plan assets for the benefit of the plan sponsor or anyone other than the plan participants." *Aldridge v. Lily-Tulip, Inc. Salary Ret. Plan Benefits Comm.*, 953 F.2d 587, 592 n.6 (11th Cir. 1992).

Here, Plaintiff fails to allege any "removal of plan assets for the benefit of" someone "other than . . . plan participants." Instead, Plaintiff's claims are premised on the Company's failure to contribute *additional* funds to the Plan and/or to allocate funds *within the Plan* differently so as to avoid the need to charge participants for administrative expenses. Am. Compl. ¶ 48. Neither action, however, gives rise to anti-inurement liability. *See, e.g.*, *Aldridge*, 953 F.2d at 591 (affirming dismissal of anti-inurement claim where claim was based on failure of "the sponsor to *add* funds to the plan" (emphasis in original)); *Holliday v. Xerox Corp.*, 732 F.2d 548, 549, 551 (6th Cir. 1984) (affirming dismissal of anti-inurement claim based on "the transfer of funds from one pension account to another within the company's pension plan"). Indeed, if the allocation of forfeitures to cover company contributions qualifies as inurement under ERISA, then such allocation would *always* violate § 403(c), notwithstanding Treasury regulations specifying that, in some cases, such allocations are *required*, *see supra* at 1 (citing 26 C.F.R. § 1.401-7(a)), and DOL guidance specifying that, in all instances, such allocations are *permissible*, *see supra* at 1 (citing DOL Adv. Op. 79-56A, 1979 WL 7031 (Aug. 9, 1979)).

The Sixth Circuit's decision in *Holliday* is instructive. In *Holliday*, former employees of companies acquired by Xerox deposited the pension accounts they acquired in the course of their previous employment into an account within Xerox's pension plan. *Id.* at 549–50. Xerox then transferred those accounts into a separate plan it maintained for employees, after which Xerox used the transferred accounts as a setoff in calculating

acquired employees' benefits.  *Id.*  The employees whose accounts were transferred brought an anti-inurement claim against Xerox, reasoning that the company had violated § 403(c) by transferring assets within its pension program for the purpose of reducing its contributions to the plan.  *Id.* at 550.

The Sixth Circuit rejected this theory of liability.  As the court explained, there is "no violation of either the letter or the spirit of ERISA in this transfer and subsequent intercompany offset of retirement funds" where plan assets were not removed from the plan and were instead used to pay participants' benefits and defray costs.  *Id.* at 551.  In the years after *Holliday*, other courts have reached similar conclusions, rejecting anti-inurement claims in the absence of allegations that plan assets were removed from the plan for the benefit of an employer or plan sponsor.  *See, e.g.*, *Maez*, 54 F.3d at 1506 (affirming dismissal of anti-inurement claim where "[p]laintiffs simply claim that defendants should have used the surplus plan assets to benefit plaintiffs instead of using them to fund a second early retirement offer"); *Krohnengold*, 2022 WL 3227812, at *11 (dismissing anti-inurement claim where "[p]laintiffs do not allege any . . . reversion or diversion of Plan assets to [sponsor]").

Here, because Plaintiff fails to allege that Defendants removed Plan assets from the Thermo Fisher Plan, her anti-inurement claim fails as a matter of law.

### III.   Plaintiff Has Failed to State a Claim for Violation of ERISA's Prohibited Transactions Provisions.

Plaintiff brings one claim under ERISA § 406(a)(1), which prohibits ERISA fiduciaries from "caus[ing] the plan to engage in a transaction" that "he knows or should know . . . constitutes a . . . (A) sale or exchange, or leasing, of any property between the plan and a party in interest" or "(D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan."  29 U.S.C. § 1106(a)(1).  Plaintiff also brings a claim under ERISA § 406(b)(1), which prohibits an ERISA fiduciary from "deal[ing] with the

assets of the plan in his own interest or for his own account." *Id.* § 1106(b)(1).  Both of these so-called "prohibited transactions" claims fail for multiple reasons.

First, to state a claim under ERISA § 406, a plaintiff must allege that a defendant was acting in a fiduciary capacity with respect to the contested transaction.  *Spink*, 517 U.S. at 889–90.  Here, because Plaintiff's allegations about the Company's decision to reduce its contributions to the Plan implicate settlor—not fiduciary—decisions, Plaintiff's claims under § 406 fail to state a cause of action.  *See, e.g.*, *Black v. Greater Bay Bancorp Exec. Supp. Comp. Benefits Plan*, 2017 WL 8948732, at *9 (N.D. Cal. Jan. 18, 2017) (actions by company to "save itself from having to make Plan contributions" did not violate ERISA § 406).

Second, to the extent Plaintiff complains about Defendants' allocation of forfeitures within the Plan, Plaintiff has failed to state a viable claim.  As controlling law makes clear, ERISA § 406 is concerned only with "commercial bargains," *Wright*, 360 F.3d at 1101—specifically, bargains that "present a special risk of plan underfunding because they are struck with plan insiders," *Lockheed*, 517 U.S. at 892–93.  Allocations of assets within a plan are not commercial transactions, and thus they do not implicate ERISA § 406.  For this reason, courts routinely dismiss prohibited transactions claims based on the allocation, or reallocation, of assets within a plan.  *See, e.g.*, *Chao v. Hagemeyer N. Am., Inc.*, 2006 WL 8443663, at *9 (D.S.C. Oct. 20, 2006) (dismissing § 406(a)(1) claims premised on "exchanges or 'reallocations' between accounts" within a pension plan).

Third, Plaintiff's prohibited transactions claims fail because they effectively challenge Defendants' use of forfeitures to pay benefits instead of the Plan's expenses.  It is well established that "the payment of benefits is . . . not a 'transaction' in the sense that Congress used that term" in § 406.  *Spink*, 517 U.S. at 892–93.  Accordingly, courts routinely dismiss prohibited transactions claims that challenge the payment of benefits to participants.  *See, e.g.*, *Chao*, 2006 WL 8443663, at *9 (dismissing claims under § 406(a)(1) because "[a] distribution of retiree benefits to a plan participant . . . cannot be

18

the basis of a cause of action pursuant to ERISA § 406"); *Armstrong v. Amsted Indus., Inc.*, 2004 WL 1745774, at *10 (N.D. Ill. July 30, 2004) (dismissing claims under § 406(a)(1) because "the payment of benefits to plan participants is outside the boundaries of § 1106(a)(1)(D)").

Finally, Plaintiff's arguments fail for the same reasons as her arguments with respect to ERISA's anti-inurement provision.  If the allocation of forfeitures to cover company contributions is a prohibited transaction under ERISA, then such allocations would always violate ERISA § 406, even though Treasury regulations and DOL guidance specify that such allocations are permissible and, in some cases, required.  *See supra* at 1. Plaintiff cannot square her position with these regulations and guidance.

In sum, however the Court approaches the issue, the answer is the same: Plaintiff has not pled the elements necessary to state a prohibited transactions claim under ERISA § 406.  Plaintiff's claims under this section should be dismissed.

## IV.    Plaintiff Has Failed to State a Claim for Failure to Monitor Fiduciaries.

Finally, Plaintiff's failure to monitor claim should be dismissed because it fails to state a cause of action.

As courts in this Circuit have explained, claims for failure to monitor fiduciaries are "derivative" of the underlying breach of fiduciary duty claim and therefore "fail[]" when the underlying breach claim is "subject to dismissal."  *Wehner v. Genentech, Inc.*, 2021 WL 507599, at *11 (N.D. Cal. Feb. 9, 2021); *see also Monper v. Boeing Co.*, 104 F. Supp. 3d 1170, 1180 (W.D. Wash. 2015) ("[F]ailure to monitor [claims] are derivative claims that necessarily fail where there is no underlying violation.").

As explained above, Plaintiff's breach of fiduciary duty claims fail because Plaintiff fails to state a breach of fiduciary duty or plead an injury to the Plan.  *See supra* at 7–15.  Because Plaintiff's breach of fiduciary duty claims should be dismissed, Plaintiff's failure to monitor claim should be dismissed as well.

Alternatively, Plaintiff's failure to monitor claim should be dismissed because Plaintiff has failed to allege any facts in support of her claim.  Indeed, Plaintiff alleges *no*

*facts* about Thermo Fisher's alleged monitoring of—or failure to monitor—Plan fiduciaries.  Instead, Plaintiff merely assumes that any monitoring by the Company must have been deficient because there was an alleged breach of fiduciary duty.  Such conclusory statements are insufficient to state a cause of action.  *Whyte v. City of San Diego*, 2022 WL 17491178, at *2 (S.D. Cal. Dec. 7, 2022) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. (quoting *Iqbal*, 556 U.S. at 678)).

## CONCLUSION

For the foregoing reasons, the Amended Complaint should be dismissed.

Dated: January 11, 2024                  Respectfully submitted,

                                          COVINGTON & BURLING LLP

                                          By: /s/  *Lindsey Barnhart*
                                          Lindsey Barnhart (Bar No. 294995)
                                          3000 El Camino Real
                                          5 Palo Alto Square, 10th Floor
                                          Palto Alto, CA 94306
                                          Telephone: (650) 632-4700
                                          Facsimile: (650) 632-4800
                                          Email: lbarnhart@cov.com

                                          Christian J. Pistilli (DC Bar No. 496157)
                                          (*pro hac vice* pending)
                                          Robert Newman (DC Bar No. 457976)
                                          (*pro hac vice* pending)
                                          850 Tenth Street, NW
                                          Washington, DC 20001
                                          Telephone: (202) 662-6000
                                          Facsimile: (202) 778-5342
                                          Email: cpistilli@cov.com
                                          Email: rnewman@cov.com

                                          William E. O'Neil (NY Bar No. 5238415)
                                          (*pro hac vice* pending)
                                          620 Eighth Avenue
                                          New York, NY 10018
                                          Telephone: (212) 841-1000
                                          Facsimile: (212) 841-1010
                                          Email:  woneil@cov.com

                                          *Attorneys for Defendants*

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S AMENDED
COMPLAINT

CASE NO.: 3:23-CV-1732-TWR-JLB

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Southern District of California using the CM/ECF system on January 11, 2024.  I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct.

Dated:  January 11, 2024

COVINGTON & BURLING LLP

By:   */s/ Lindsey Barnhart*
Lindsey Barnhart
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palto Alto, CA 94306
Telephone: (650) 632-4700
Facsimile: (650) 632-4800
Email: lbarnhart@cov.com

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

CASE NO.: 3:23-CV-1732-TWR-JLB